**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ANGELA GAMBINO, individually and as Agent for BROKERAGE RESOURCES, INC. of Illinois, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 25-cv-08216 |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| PAULINE A. PETITT and BROKERAGE RESOURCES, INC. of Missouri, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Angela Gambino, individually and as Agent for Brokerage Resources, Inc. of Illinois ("BRI") ("Plaintiff") brings claims against Pauline A. Petitt and Brokerage Resources, Inc. of Missouri ("BRM" and, together with Petitt, "Defendants") alleging breach of contract, fraud, and unjust enrichment related to withholding commission payments from Plaintiff's insurance sales. Before the Court is Defendants' motion to dismiss. For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss [20].

**BACKGROUND**

The following facts are drawn from Plaintiff's complaint and accepted as true for the purpose of resolving Defendants' motion. Gambino is an Illinois insurance producer and the sole owner and principal of BRI. Plaintiff alleges that she and Defendants had a "longstanding and consistently followed compensation agreement" since 2014, wherein Plaintiff was entitled to receive 90% of the first-year commissions and renewal commissions from insurance policies she sold. Defendants, not Plaintiff, were often listed as the agent of record in the documentation for Plaintiffs' insurance sales.

1

Defendants received the commission checks from insurers and would remit Plaintiff her 90% share of the commission payments.

Plaintiff alleges that on July 3, 2017 she and Defendants entered into a written agent agreement (the "2017 Agreement") with BRM memorializing their course of business. Relying on this arrangement, she "personally solicited, prepared, and submitted every policy application related to the commissions at issue, often using her own insurance platform credentials." Defendants honored their agreement to remit 90% of the commission to Plaintiff until January 2018, when Plaintiff claims that Defendants "abruptly stopped" the payments. Defendants sent Plaintiff a letter purporting to be a "full release of all insurance companies she is licensed with through [BRM], effective immediately."

Plaintiff accuses Defendants of failing to pay her the commissions she earned "despite her repeated demands." As a result of Defendants' alleged breach of their agreement, Plaintiff claims approximately $144,000 in damages from withheld commission payments.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Therefore, when considering such a motion, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint on a myriad of grounds. As to Count I (Breach of Contract) they claim that Plaintiff alleges an unenforceable contract; that Plaintiff's claims are barred by the doctrine of *in pari delicto*; that Plaintiff has not alleged mutual assent; and that Plaintiff's breach of contract claims are time-barred. As to Counts II (Common Law Fraud), Defendants argue that any fraud claim is barred by the economic loss doctrine; that Plaintiff alleges nonactionable promissory fraud; that Plaintiff fails to plead the elements of fraud with particularity; and that Plaintiff could not have justifiably relied on the alleged misrepresentations. Finally, as to Count III (Unjust Enrichment) Defendants argue that the claim is precluded by the express contract that Plaintiff alleges. Defendants also argue that no basis exists for imposing individual liability against Petitt at all.

### I. Breach of Contract

#### a. *Unenforceability & In Pari Delicto*

Defendants argue that Plaintiff's complaint must be dismissed because in bringing her case she "admits to participating in a scheme to receive commissions for which she was legally ineligible." Specifically, Defendants claim that an agreement to pay Plaintiff commissions "violates the direct statutory prohibition on producer compensation" found in the Illinois law. The Illinois Insurance Code provides that an insurer may not pay a commission to a person for selling insurance "if that person is required to be licensed under this Article and is not so licensed at the time of selling … the insurance." 215 ILCS 5/500-80(a). Defendants assert that the phrase "not so licensed" means that one must be both properly licensed and "authorized for the specific conduct at issue," *i.e.*, "selling insurance on behalf of a particular insurer." According to Defendants, the required authority to sell

insurance "on behalf of a particular insurer" is established through a formal "appointment." Defendants argue that the fact that Plaintiff admits that she was not always listed as the "agent of record" means that she was not "appointed" to sell insurance on behalf of Defendants, therefore lacking the specific authorization required to be "licensed" and qualify for commission payments.

Defendants fail to explain how Plaintiff's licensure was insufficient and how she was unauthorized to sell on behalf of Defendants, so as to render her ineligible to collect commission payments. Defendants characterize an "appointment" as a "a legally significant status whose termination is regulated in part under [215 ILCS 5/500-85]." That provision says nothing to require a formal "appointment" for authorization to sell insurance on behalf of an insurer. It sets out notice requirements for when an insurer terminates the "appointment, employment, contract, or other insurance business relationship" with a producer, plainly contemplating methods of authorization other than "appointment." For the same reason, Defendants' argument that Plaintiff's claims are barred by the doctrine of *in pari delicto* also fails. Defendants argue that Plaintiff was *in pari delicto*—or "in equal fault"—because she claims to be "the direct beneficiary of the illegal arrangement she now seeks to enforce." But because Defendants have not shown that the alleged contract was illegal, they have not shown a basis to dismiss Plaintiff's claim as "in equal fault."

b. *Mutual Assent & Statute of Limitations*

Next, Defendants claim that there was "no meeting of the minds on the specific contract [Plaintiff] now sue[s] to enforce," because Plaintiff's case rests upon an unwritten contract rather than the 2017 Agreement. Defendants urge the Court to consider as part of Plaintiff's complaint an e-mail ostensibly from Plaintiff to Petitt dated February 24, 2018 (the "February 24 E-mail"), which Defendants attach to their motion. In the February 24 E-mail Plaintiff purports to reference to an "understanding … that [the parties] have been going off of for the last almost 9 years." Defendants

4

argue that this is "a direct admission that the operative agreement, in [Plaintiff's] own mind, was not the 2017 written contract with Defendants, but rather an unwritten 'understanding ….'"

In deciding a Rule 12(b)(6) motion, a court "may consider 'documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).  A typical example of a document "central" to a plaintiff's claim is a contract, in a suit for breach of contract.  *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).  This "incorporation-by-reference" doctrine is not intended to allow defendants to introduce extrinsic evidence on a motion to dismiss and "grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment."  *Id.*

Defendants assert that the February 24 E-mail is central to Plaintiff's claim because it is "Plaintiff's own contemporaneous statement about the nature of the purported governing agreement, which directly impacts the essential element of mutual assent to the 2017 contract alleged in [her] Complaint."  But Plaintiff does not quote nor refer to those communications in her complaint; her allegations are based upon a breach of the terms defined in the 2017 Agreement.  Defendants offer nothing more than the February 24 E-mail to support their argument that the 2017 Agreement was a "fiction" and that an earlier unwritten agreement governed.  Taking the facts in her complaint as true and drawing all inferences in favor of Plaintiff, the operative agreement in her action is the parties' alleged 2017 Agreement.

Because Plaintiff alleges a breach of a written agreement, Defendants' argument that Plaintiff's case is time-barred by the five-year statute of limitations for unwritten contracts is unavailing.  In Illinois the statute of limitations for written contracts and debts is ten years after the cause accrued.  735 ILCS 5/13-206.  Plaintiff alleges that Defendants' failure to pay her commissions beginning in 2018 was a breach of the 2017 Agreement.  She brought this action in July 2025, well within the ten-

5

year limitations period. Thus, there is no basis to dismiss Plaintiff's breach of contract claim on statute of limitations grounds.

## II.     Common Law Fraud

In support of their motion to dismiss Plaintiff's common law fraud claim, Defendants rely on the economic loss doctrine established in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982). The doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman,* 91 Ill.2d at 81). Defendants argue that Plaintiff's "alleged injury is the failure to receive the benefit of their bargain – the commission payments – which is the quintessential contractual injury." Furthermore, they argue Plaintiff alleges promissory fraud, which is inactionable under Illinois law because "alleged misrepresentation must be statements of present or preexisting facts, and not statements of future intent or conduct." *Ault v. C.C. Services, Inc.*, 232 Ill. App.3d 269, 271 (1992).

The Court agrees with both arguments. Plaintiff's fraud claim is barred by the economic loss doctrine, which prohibits recovery in tort for purely economic losses arising from a contract dispute. Plaintiff's claim is an improper attempt to plead a breach of contract as a tort. Additionally, the alleged fraud does not concern a misrepresentation of facts, but of future intent. Because these alone are sufficient grounds to dismiss Plaintiff's fraud claim, the Court does not reach the issues of whether Plaintiff pleaded with particularity and whether there was justifiable reliance.

## III.     Unjust Enrichment

Next, Defendants argue that Plaintiff's claim for unjust enrichment is "duplicative and legally improper, as it is precluded by the express contract" that Plaintiff alleges. A claim for unjust enrichment is "based on an implied contract," meaning "'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *People*

*ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497, 607 N.E.2d 165, 177 (1992) (internal citations and quotation marks omitted).

The Court again agrees with Defendants. Here, Plaintiff's claim is not based on an implied contract. Plaintiff explicitly alleges the existence of the 2017 Agreement governing the relationship between herself and Defendants vis-à-vis remitting commission payments, and claims that Defendants retained commissions from Plaintiff in violation of that agreement. Because Plaintiff has not stated a claim for unjust enrichment, Count III must also be dismissed.

### IV.     Individual Liability

Defendants conclude by arguing that Plaintiff's remaining breach of contract must be dismissed as to Petitt individually. Because she signed only in her representative capacity for BRM, Defendants argue, Petitt is not a party to the contract Plaintiff seeks to enforce and cannot be held liable for any breach.

Under Illinois law, "an agent is not personally bound by an agreement he signs in a representative capacity 'absent evidence of contrary intent in the document.'" *R.R. Maint. & Indus. Health & Welfare Fund v. Mahoney,* 144 F.4th 957, 962 (7th Cir. 2025) (quoting *Wottowa Ins. Agency, Inc. v. Bock*, 104 Ill.2d 311 (1984)). Petitt's signature appears on the contract next to the signature line for BRM following the word "By:", indicating that she signed on behalf of the company. Nothing in Plaintiff's complaint establishes nor allows the Court to infer that Petitt agreed to be personally liable on the 2017 Agreement. Because she is not a party to the agreement and acted as agent for BRM, Count I must be dismissed as to Defendant Petitt.

7

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's Counts I and III, grants Defendants' motion to dismiss Count I as to Defendant Pauline A. Petitt, and denies Defendants' motion to dismiss Count I as to Defendant Brokerage Resources, Inc. of Missouri [20].

**IT IS SO ORDERED.**

Date: 7/28/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

8